IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO.   1:13-CR-187-ODE |
| STEVEN E. THOMPSON | : | |

## Sentencing Memorandum

The United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Susan Coppedge and Leslie Abrams, Assistant United States Attorneys, files this Sentencing Memorandum to assist the court in the above-captioned sentencing.

## Background

On May 6, 2014, a federal grand jury returned a superseding indictment charging the defendant, Steven E. Thompson, also known as "Silk" with a substantive count of sex trafficking of a minor by force, fraud and coercion; conspiracy to do the same; and two counts of persuading, inducing, and enticing two adult women with traveling in interstate commerce to engage in prostitution.   Doc. 101.   On June 2, 2014, a jury trial began in the case, ending on June 5, 2014, with the jury's guilty verdict on Counts One through Four.

**Argument**

**A.      Correct application of the Sentencing Guidelines provides for a base offense level of 44 and restitution in the amount of $22,500.**

The Court has the objections filed by the United States to the Presentence Report which, if sustained, results in a total offense level of 44. An offense level of 44 would result in an advisory guideline range of life for the defendant.

1.      C.R. was in the care, custody, or supervisory control of Defendants

Defense counsel objected to the two-level enhancement under the Guidelines for CR being in the custody, care and or supervisory control of Thompson.   U.S.S.G. § 2G1.3(b)(1)(B), PSR ¶ 36.   Counsel can only find three cases that discuss this guideline provision in any detail.   The Eleventh Circuit held in United States v. Jennings, a similar case, that the defendants were "temporary caretakers" over the minor victim and that the two-level enhancement applied, noting that the commentary "states the provision is to have broad application" and does not "exclude a minor's entrustment of herself to a defendant."   280 Fed. App'x. 836, 844-45 (11th Cir. 2008). Another district court applied the two-level enhancement noting that the minor victim lived with defendant for less than a week, and "he provided her

room, board and clothing.   She also surrendered all the money she made to him."   <u>Nelson v. United States</u>, 2014 WL 2048096 at 4 (N.D. Tex. 2014). Similarly in the present case, CR had no place to live, no means to support herself, and was taken in by defendants Thompson and Waters - they were her temporary caretakers.   CR testified at trial that defendants booked her dates for commercial sex acts, drove CR to the customers, and took all of the money she made.

The Ninth Circuit over-ruled the district court's application of the § 2G1.3(b)(1)(B) enhancement finding that "only defendants who exploit a pre-existing parent-like position of authority" should receive the enhancement.   <u>United States v. Brooks</u>, 610 F.3d 1186, 1201 (9th Cir. 2010). This interpretation is too narrow and does not comport with the guideline commentary to "look to the actual relationship that existed between the defendant and the minor and not simply the legal status of the defendant-minor relationship."   Further, under the facts of this case, defendants knew CR needed a place to live and means of support – she was in their care, and they caused her to go on "dates" to earn money, thereby exercising supervisory control over her.

     2.    <u>Defendants used a computer to entice, encourage, offer and solicit persons to engage in prohibited sexual conduct.</u>

The computer enhancement pursuant to U.S.S.G. § 2G1.3(b)(3)(B) applies in this case as Thompson, working in concert with Waters, used a computer to advertise C.R. on the internet and solicit customers for her. <u>United States v. Vance</u>, 494 F.3d 985, 997 (11th Cir. 2007), *superseded on other grounds by* U.S.S.G. sup. to app. C, amend 732 (2009)(requiring that there be a real minor).   Waters and C.R. both testified that they each communicated with prospective clients who were responding to the Backpage advertisements posted by Waters and Thompson.   Waters and Thompson used the condominium computer to post the advertisements.   The customers would view the advertisements on the internet and call Waters or C.R. on their cellphones, said numbers having been posted on the internet advertisement, to arrange the location and price for the commercial sex act.   The cell phones and the computer fit the definition of computer in 18 U.S.C. § 1030(e)(1). <u>See</u> U.S.S.G. §  2G1.3 notes 1. and 4.; <u>U.S. v. Kramer</u>, 631 F.3d 900, 902 (8th Cir. 2011).   The Court heard testimony from Waters and C.R. that they used the cell phones to send texts and retrieved photos off the C.R.'s cellphone to use for the Backpage advertisements.   The text messages were admitted as exhibits at trial.   Exhibits 72-78, 111.

Further, the Eleventh Circuit has relied on the plain language of the Guideline to find that the enhancement does not require that the defendant personally solicit the minors.   <u>Vance</u> at 997.   Other Circuits have agreed that if the language of the application Note 4 conflicts with the plain language of U.S.S.G. §  2G1.3(b)(3)(B), then the plain language of the guideline applies. <u>United States v. Pringler</u>, 2014 WL 4216052 (5th Cir. 2014); <u>United States v. Winbush</u>, 524 F. App'x 914, 916 (4th Cir. 2013).  *Cf.*   <u>United States v. Patterson</u>, 576 F.3d 431, 434, 443 (7th Cir. 2009)(internet ads for defendant's minor prostitute were posted by another minor working for a different pimp so enhancement not applied).   The Third Circuit found that the enhancement is applicable regardless of the conflicting language in the application note where the defendant made postings related to a minor prostitute on craigslist.org and exercised a type of "supervisory control" over the minor, comparable to the Backpage.com posts at issue in this case and the control Thompson had over C.R.   <u>United States v. Burnett,</u> 377 F. App'x 248, 252 (3rd Cir. 2010).

3.   Restitution of $22,500 is due C.R.

By statute, the defendants are required to pay restitution to C.R.   18 U.S.C. § 1593(a).   United States v. Robinson, 508 Fed. App'x 867, 870 (11th Cir. 2013).   One method of calculation is the greater of the gross income or value to the defendant of the victim's services or labor.   Id. at 871 (citing Title 18 U.S.C. § 1593(b)(3)).   Courts have relied on the victim's testimony to calculate restitution and have rejected arguments that restitution rewards the victims for their illegal activity.   United States v. Cortes-Castro, 511 Fed. App'x 942, 947 (11th Cir. 2013)(calling the argument "preposterous given that his victims were enslaved and forced to prostitute."); United States v. Huff, 609 F.3d 1240, 1249 (11th Cir. 2010)(sex trafficking victims are entitled to be made whole for their losses).   C.R. testified that her first night working she made $500.   Using the earliest day that C.R. was posted on Backpage.com, she began working for Thompson and Waters on April 24, 2011, a Sunday. Thereafter, C.R. testified she averaged four clients a day during the week and six clients on Fri-Sun.   Prices on line ranged from $85 (which C.R. testified was for 15 minutes) to $100 (half an hour) to $150 (an hour).   The figure of $100 per customer was used.   CR was arrested by APD on June 11th, so June 10th was the last day customers were counted.   Using the figures of six clients per weekend day (Friday-Sunday), four clients per week day (Mon.-Thurs.),

and an average price of $100.00 per client results in restitution owed of $22,500.

Defendant mistakenly relies on the visitor logs from the condominium to estimate the number of men who paid for sex.   The concierge, Waters, and C.R. all testified that while visitors were supposed to sign in, that was not strictly enforced.   PSR ¶ 20.   Waters and C.R. also testified that some commercial sex acts occurred outside of the condominium, which was corroborated by the testimony of the client, Adam, and by the recovery of C.R. at a hotel during an Atlanta Police Department sting operation.

**B.    A reasonable sentence under 18 U.S.C. § 3553(a) is 35 years.**

Defendant Thompson should receive a sentence of 35 years as this sentence is appropriate under the factors to be considered by the Court.   18 U.S.C. § 3553(a).

1.    Defendant's Criminal History is Extensive and Understated in the Guideline Calculation.

Title 18 U.S.C. § 3553(a) provides factors for the Court to consider including the history and characteristics of the defendant, the need to protect the public from further crimes of the defendant, and to afford adequate deterrence to criminal conduct.

It is clear from Defendant Thompson's criminal history that the only time he is not committing crimes is when he is locked up; even being on supervised release has not deterred him from committing crimes. The criminal history also notes the escalation in the seriousness of defendant's criminal acts. The sex trafficking of C.R. is the third federal crime defendant has committed in the greater Atlanta area. PSR ¶ 76 (possession of a firearm by a convicted felon); 77 (counterfeiting currency). Defendant also has 15 state convictions during his adulthood, *none of which were used in determining that his criminal history category was a IV*. PSR p. 16-20 (convictions not counted based on being more than ten years old, U.S.S.G. § 4A1.2(e)). In the trajectory of his crime-filled life, many of the crimes involved weapons, including a conviction for being a felon in possession of a firearm and five state convictions involving weapons. PSR ¶¶ 76, 62, 67, 68, 70, and 75. Related to his federal felon in possession conviction, the PSR notes that defendant pointed a gun at his girlfriend in 1999, and in 1995 struck, threatened and pointed a pistol at his girlfriend. PSR ¶ 76. Defendant also has a conviction for abandonment of a minor child, and, in 1997, a conviction for family violence battery for striking a woman in the face and throwing her body about sufficiently to cause a cut on her forehead and bruising of her left cheek. PSR ¶¶ 71, 74. The defendant "seems as though

he is determined to serve a life sentence, albeit on the installment plan."
United States v. Shaw, 560 F.3d 1230, 1232 (11th Cir. 2009).   The United
States will seek the final installment for defendant Thompson at his
sentencing.

Further, the Court's sentence should also promote a respect for the law.
It is quite clear from his record, that defendant has no respect for the law and
has tried to hide his criminal behavior behind the use of 13 aliases.   PSR, p. 3;
¶¶ 62, 82, 87 (alias Greg Sanders); 63, 64 (alias Michael Greene); 66 (charge
of giving a false name not presented to Grand Jury); 68, 88 (alias Randall
Hill); 69 (alias Byron Smith); 70 (alias Rondall Hill); 71 (alias Byron Green);
75, 76 (alias David Evans); 83 (alias Steven Walsh); 84, 85 (alias Mike Irvin);
85 (alias Greg Green); 86 (alias Vincent Smith) 91(alias Chadrus Laquarda
Brown); and 96, 97, 100, 101 (alias Willie Spearman).   Defendant
Thompson's repeated use of aliases has also led to charges of obstruction of
an officer and giving a false name.   PSR ¶ 72.   Finally, when defendant was
on supervised release for the felon in possession conviction, he falsified his
employment to a Senior U.S. Probation Officer -- going so far as to provide
bogus paychecks.   Defendant's history of lying to law enforcement and his
repeated criminal violations are additional factors to be considered in arriving
at a fair and reasonable sentence.

Under the Sentencing Guidelines, Section 4A1.3, a district court may depart or vary from the advisory sentencing range "if reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G.§ 4A1.3(a)(1).  See also United States v. McKinley, 732 F.3d 1291, 1298 (11th Cir, 2013).  With a guideline calculation of 44, an upward variance or departure would have no impact on defendant's sentence; however, the Court should consider the defendant's extensive and under-represented criminal history in calculating a reasonable sentence.

2.   Characteristics of defendant Thompson and the nature and circumstance of the offense warrant a lengthy sentence

In examining the characteristics of defendant Thompson, it is clear that he has not been remorseful for his role in this crime and continues to demonstrate his lack of respect for the law and his danger to the community. In evaluating the nature and circumstances of the offense, it is clear that Defendant Thompson controlled both the minor victim C.R., and also, to an extent, his co-defendant, Tierra Waters.   In 2011, defendant Thompson was 41 to C.R.'s 17 years-old.  Waters testified that C.R. was somewhat naïve and that she and Thompson knew C.R. was from a foreign country and needed

a place to live.   Because of the defendants, seventeen-year-old C.R. was advertised on the internet as a commodity to be consumed, and sold to men in the greater Atlanta area.   C.R. testified that initially she would not answer the calls that came to her phone, so Waters and Thompson routed the calls to Waters' phone so they could monitor C.R.'s "dates," set the prices, and collect all the money C.R. earned from defendants' sale of her body.   C.R. stated that she never wanted to work in prostitution.   Further, C.R. testified at trial that she was afraid of defendant and complied with his demands to have sex on two occasions.   Defendant Thompson took advantage of C.R.'s age, her background, and her need for a place to stay to compel her to engage in prostitution.   Defendant's main source of income was a criminal enterprise he ran providing a juvenile and a young woman, co-defendant Waters, for prostitution.

Waters testified that defendant threatened to kill her on numerous occasions, and actually acted on this threat on one occasion by crashing the vehicle in which they were riding into a tree.   Waters testified that she turned over all of her earnings from prostitution to the defendant and recruited other women to come and work for him, including C.R., Alicia LNU, and Aumbrea.

In another human trafficking case in this district, the late United States District Court Judge Owen Forrester noted the following about human trafficking in the context of adults:

That is why this is a terrible crime.   Because freedom is one of the most precious things a secular society can give its members.

We say that our country exists to give us life, liberty, and the pursuit of happiness, well there is liberty and freedom again.   Pursuit of happiness also includes personal dignity.   And I can't think of many things that are more demeaning than forcing anyone to participate in prostitution, sex.   That is why rape has always been one of the most serious crimes in our society.   And I hope our society is becoming alert enough to not distinguish between rape and what pimps are doing to the women they control.

United States v. Harrison Norris, 1:05-CR-479 (N.D. Ga), Doc-548 at 51-52.

A last example of defendant's character was observed by the Court during trial.   Defendant Thompson repeatedly and demonstratively reacted to questions and testimony.   Ultimately, the Court reprimanded defendant, telling him not to respond to questions and arguments either verbally or by his reactions.   The Court can and should note defendant's own behavior during the course of the trial.

3.   Thirty-Five years avoids unwarranted sentencing disparities and provides adequate deterrence.

Another factor this Court will consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who

have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).   In this district, a 35 year sentence comports with other similarly situated defendants who went to trial and were convicted of sex trafficking counts.   United States v. Mustafa, 1:11-CR-234-CAP (life sentence for trafficking 6 victims including one juvenile; no prior criminal history);   United States v. Amador Cortes Meza, 1:08-CR-55-RWS (40 year sentence for trafficking 9 victims including 3 juveniles; no prior criminal history);   United States v. Sims, 161 Fed. App'x. 849 (N.D. GA. 2006) (28 years for trafficking one juvenile victim).   Defendant Norris, who was found guilty of trafficking six adult women, had no prior criminal history and faced a guideline range of life. Norris was sentenced to 35 years; 25 years on the sex trafficking charges and 10 years to run consecutive for obstruction of the investigation.   United States v. Harrison Norris, 1:05-CR-479 (N.D. Ga).   In Defendant Thompson's case the aggravating factor with respect to the Guidelines calculation is not the number of victims, but his extensive criminal history

The Court must also provide adequate deterrence to others and protect the public from further crimes of this defendant.   Sex trafficking of minors and those from other countries is a serious problem in the greater Atlanta area. Many studies have placed Atlanta among the top cites for human trafficking

in the U.S.[1]   The sentencing of those convicted of human trafficking needs to be severe enough to deter this criminal conduct.

## **Conclusion**

For these reasons, the United States respectfully requests that this Court adopt the United States' objection to the Presentence Report and include the additional specific offense characteristic under U.S.S.G. § 2G1.3(b)(3)(B), thus calculating the base offense level at 44 for the substantive and conspiracy offenses of sex trafficking of a minor.   Even if the Court were to uphold Defendant's objections to the enhancements for "custody, care and supervisory control" and "use of a computer" to facilitate the trafficking, the offense level would still be 40, with a corresponding guideline range of 360-life for defendant with his criminal history category of IV.   For all of the factors enumerated above, a fair and just sentence that takes into account the defendant's significant criminal history and the serious nature of the present crime for which he was convicted is 420 months or 35 years.

---

[1] http://www.fbi.gov/news/testimony/exploiting-americans-on-american-soil-domestic-trafficking-exposed   (Based upon an initial review of the available intelligence on child prostitution collected from ongoing investigations, human source information, information provided by numerous local and state law enforcement agencies, and the National Center for Missing and Exploited Children, 14 FBI field offices, including Atlanta, were identified as having the highest incidence of children used in prostitution.)

Respectfully submitted, this 23rd day of September, 2014.

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

*/s/ Susan Coppedge*
SUSAN COPPEDGE
Assistant United States Attorney
75 Spring Street, SW, Suite 600
Atlanta, GA 30303
404-581-6250
404-581-6181 fax
Georgia Bar Number 187251


LESLIE ABRAMS
Assistant U.S. Attorney
Georgia Bar Number 001441

## CERTIFICATE OF SERVICE

I, Susan Coppedge, certify that on this 23rd day of September 2014, the Sentencing Memorandum for Steven Thompson was served upon Defendant's attorney, Brian Mendelsohn, via electronic filing.

*/s/ Susan Coppedge*
SUSAN COPPEDGE
Assistant United States Attorney